**Gregory John LONG, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 76A05–0607–CR–387.

Court of Appeals of Indiana.

June 5, 2007.

Linda M. Wagoner, Angola, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Gregory John Long appeals his convictions, after a trial by jury, on one count of corrupt business influence, a class C felony, and two counts of theft, as class D felonies, and the sentence imposed by the trial court thereon.

We affirm.

### ISSUES

1. Whether sufficient evidence supports the convictions.

2. Whether Long received ineffective assistance of trial counsel.

3. Whether Long's sentence is inappropriate.

4. Whether sufficient evidence supports the trial court's restitution order.

### FACTS

Long owned and operated Durability Plus Engines, Inc., in Angola; he testified that he started the company in 1983. Durability Plus designed, built, rebuilt, and restored engines. Durability Plus also sold engine parts and engines to the public, and some of those products were offered for sale on eBay.

In October of 2004, Ronald Barone of Alabama, New York saw a listing—described by Long as "like putting an ad in the newspaper," (Tr. 372)—on eBay that offered a "[b]rand new NOS [c]rossram system" with a specific GM parts number for a Z–28 Camaro automobile. (Ex. 12). Before bidding, Barone called the telephone number provided in the eBay listing, and he spoke with Long. To Barone, "NOS" or "new old stock mean[t] built in 1969," (Tr. 236); thus, a NOS cross ram system with the listed GM part number was "a system" that included "the parts that went with" the cross ram and was "cast in 1969" and available for purchase at that time. (Tr. 219, 230). Barone told Long that he wanted "a real, new old stock cross ram" and not "a reproduction." (Tr. 219). Long "assured" Barone that what he was offering to sell "was a real one" and stated "that he had twelve of them that he bought back in '69." Id. Barone submitted the "winning bid" of $10,100.00 for a new system as offered. (Ex. 12). Long then informed Barone that a hood was not included in the system and would be an additional $425.00. After adding the shipping charges and the price for a hood to the bid amount, Barone sent Long a check dated October 26, 2004, in the amount of $10,820.00 and made out to Durability Plus Engines. The check cleared Barone's bank. After having not received the system, Barone started calling Long to inquire about the status of his order, and Long "kept telling" him that it would "be out shortly." (Tr. 223). In late November, Barone received a "scratched" hood with "damage all over" and "broken corners." Id. Three days later, "the cross ram showed up" and Barone "immediately ... noticed it wasn't a real one" but a reproduction. Id.

Barone called Long, who said "it should be a real one" and that he would "try to make it right" and send "a real NOS system." (Tr. 224). "[T]hree months later," Barone received "another fake." (Tr. 225). Long then called to ask Barone to send the first cross ram back, and Barone responded that if Long refunded his money, he would return the system sent by Long. Long never sent Barone a refund, and the two reproduction cross rams remained in Barone's possession.

Allen Stoltz lived in British Columbia, Canada. In October of 2004, Stoltz saw the listing by Durability Plus on eBay that offered a brand new NOS cross ram intake system for a Z–28 Camaro automobile and had sold for a winning bid of $10,100.00 plus shipping. To Stoltz, "NOS mean[t] new old stock," "a brand new, never bolted on" unit that had been "cast in 1969 or ['6]8 when they were first produced." (Tr. 192). Stoltz telephoned the number in the listing "to ask if [the seller] had any more NOS cross ram units for sale" and spoke with Long. (Tr. 191). Stoltz testified that Long "said he had approximately sixteen that he had bought way back when, in '69 or early seventies," and that he and Long "agreed on a price." (Tr. 193). Long sent Stoltz a statement dated October 28, 2004, from "Durability Plus Engines, Inc.," (Ex. 9), indicating that the cross ram system and some additional parts (including a hood and a water pump) would cost a total of $13,170.00. Stoltz sent Long a check

payable to "D.P.E., Inc." dated November 3, 2004, in the amount of $13,170.00. The check cleared, but Stoltz did not receive the merchandise he had ordered.

Stoltz telephoned Long, who informed him his order "was boxed and sitting there waiting for shipment." (Tr. 195). When the order did not arrive, Stoltz made several more telephone calls to Long, who continued to promise shipment. In January of 2005, Stoltz received "a very cheap knock off" air cleaner "with the wrong air filter inside it," "a very pitted rebuilt water pump," and a "cracked hood."[1] (Tr. 196, Ex. 11). Stoltz telephoned Long, and Long "admitted that he did not, in fact, have an NOS cross ram" but would send Long "a cross ram that's better than NOS." (Tr. 198). Stoltz responded that he "paid for . . . an NOS cast in '69 intake for a '69 Z–28, not a reproduction." *Id.* Stoltz asked for his money back, and Long responded, "Not gonna happen." *Id.* Stoltz heard nothing further from Long until after March 11, 2005. After that date, Stoltz received from Long another reproduction cross ram. Subsequently, Long sent Stoltz what he promised "was the real deal"—which he said had cost "huge money." (Tr. 200). At that point, Stoltz had been sent three cross rams: two were "fake cross rams," and one was "a used, original cross ram." (Tr. 215).

On March 11, 2005, the State had charged Long with seven counts of theft, as class D felonies, and with one count of corrupt business influence, a class C felony. Some of the charges were amended on February 22, 2006. Long was tried by a jury on February 23–24, 2006. The trial court informed the jury that Long was charged, *inter alia,* with two counts of theft: that he "knowingly or intentionally

exert[ed] unauthorized control over" (1) $13,170.00 that was "the property of Al Stoltz with the intent to deprive" Stoltz of the use or value of that property, (Tr. 128); and (2) $10,820.00 that was "the property of Ron Barone with the intent to deprive" Barone of the use or value of that property. (Tr. 130). The trial court further informed the jury that Long was charged with the offense of corrupt business influence: that "between May 7, 2004 and November 10, 2004," Long committed "a pattern of profiteering activity"—consisting of, *inter alia,* the "theft from Al Stoltz" of "$13,170.00 on November 10, 2004," and the "theft from Ron Barone of $10,820.00 on November 1, 2004," and that he "did knowingly or intentionally maintain an interest in or control of an enterprise"—Durability Plus Engines. (Tr. 131, 132).

Before testimony began, a motion for separation of witnesses was granted. Barone and Stoltz testified as reflected above. In addition, Barone testified that when he placed his order with Long and sent him a check in the amount of $10,820.00, he expected to receive a NOS cross ram unit for his 1969 Z–28 Camaro; and that at the time of trial, he had received none of his $10,820.00 back and had never received the new NOS cross ram system he ordered. Stoltz testified that by the time of trial, he had received "part of the $13,170.00" he had sent to Long; and that he had sent "both of the fake cross rams back" to Long but retained possession of the "used, original cross ram." (Tr. 199, 215). Stoltz further testified that he never received the NOS cross ram system he ordered from Long. The jury found Long guilty of having committed the crimes of theft—from Stoltz and from Barone, and of the crime of corrupt business influence as charged.[2]

---

1. With this shipment was a statement from "Durability Plus Engines, Inc." reflecting

shipment of the three parts on January 17, 2005. (Ex. 11).

2. The jury did not find Long guilty of the

The trial court held the sentencing hearing on July 14, 2006. The trial court admitted into evidence a psychiatric evaluation of Long by Dr. Francis Cyran, who reported that Long suffered from bipolar disorder, "a serious mental disorder," but had "been able to structure his life in such a manner that he functions as a productive member of society." (App. 114). Dr. Cyran opined that "prolonged incarceration" would create a substantial risk that Long's mental condition would "deteriorate." *Id.* The trial court found that Long "ha[d] an extensive criminal history," and noted that after being diagnosed as bipolar, Long had failed to comply with treatment.[3] (Tr. 674). It sentenced Long to a term of three years for each conviction of theft (as D felonies), with those sentences to be served consecutively. The trial court then imposed a sentence of eight years on the corrupt business influence conviction, a class C felony, with that sentence to be served concurrently with the theft sentences. In addition, the trial court ordered Long to pay restitution to Barone in the amount of $10,820.00[4] and to Stoltz in the amount of $4,000.00.[5]

## DECISION

### 1. *Sufficiency of the Evidence*

■ When addressing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). Moreover, we "must consider only the probative evidence and reasonable inferences supporting the verdict." *Id.* Thus, we "must affirm" if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

### a. *Corrupt Business Influence*

■ Long argues that conviction for the offense of corrupt business influence requires proof of two "elements, namely an enterprise and a pattern of criminal activity," and "the evidence did not support either prong required for conviction." Long's Br. at 7. We cannot agree.

As noted above, the jury was instructed that the State had alleged that Long committed the offense of corrupt business influence when he (1) committed "a pattern of profiteering activity," the specific allegations of which included the "theft from Al Stoltz" of "$13,170.00 on November 10, 2004," and the "theft from Ron Barone of $10,820.00 on November 1, 2004," and that Long "did knowingly or intentionally maintain an interest in or control of an enterprise," specifically, Durability Plus Engines. (Tr. 131, 132; also at Tr. 519). Indiana law provides that the offense of "corrupt business influence" is committed when a person "through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise." Ind.Code § 35–45–6–2(2). The definition of "enterprise" in the statute includes both "a sole proprietorship" and a "corporation." I.C. § 35–

---

other offenses charged, concerning sales by Long of automotive parts other than the NOS cross ram system he offered on eBay.

3. Testimony by Long's mother at a previous hearing supported this observation by the trial court.

4. The order specified that this sum be paid to the clerk of the court and "released upon Mr. Barone returning both sets of cross rams and other parts." (Tr. 681).

5. The trial court noted that the amount of restitution to Stoltz was "problematic because the parts apparently have been installed and have been used." (Tr. 681).

45–6–1. Further, the statute provides that a " '[p]attern of racketeering activity' means engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method or commission," and "racketeering activity" includes the commission of the offense of theft. Ind.Code § 35–45–6–1; *see also Kollar v. State*, 556 N.E.2d 936, 940 (Ind.Ct.App.1990), *trans. denied.*

█ Long argues that the State "failed to prove an enterprise separate and distinct from Mr. Long as an individual," and that "[n]o evidence was produced at trial as to the organizational nature of Durability Plus." Long's Br. at 12. The assertion is not well founded. Two documents bearing the letterhead of "Durability Plus Engines, Inc." were admitted into evidence. *See* Ex. 9, Ex. 11. Further, as quoted above, the Indiana statute expressly defines "enterprise" to include not only a corporation but also a sole proprietorship. *See* I.C. § 35–45–6–1. Finally, throughout Long's own testimony, he repeatedly used the pronoun "we" when describing the actions of Durability Engines Plus with respect to filling the orders placed by Barone and Stoltz; identified his son as having placed an eBay listing for merchandise offered by Durability Engines; and referred to work by his secretary and by employees named "Jim" and "Allen." (Tr. 354, 364, 372, 376, 384, 386, 391, 398). Thus, the evidence does not accord with Long's argument that "D.P.E. and Greg Long and [sic] one and the same." Long's Br. at 12.

█ Evidence that Long's acts constituted a "pattern" include the following. His eBay listing offered to sell a specific product that Long did not have. When potential buyers Barone and Stoltz inquired in response to seeing that listing, Long informed each that he had in his possession at least a dozen NOS cross ram systems that he purchased years ago when they were originally produced. Further, both Barone and Stoltz testified that Long had told them that at the time of their conversations, he had NOS cross ram systems in his possession and offered to sell the systems for a specific price. Both potential buyers agreed on a purchase price with Long, and they sent checks made payable to Durability Plus Engines. The payments were received and cleared their banks, but no NOS cross ram system was shipped to either Barone or Stoltz.

Evidence presented to the jury supports the reasonable inference that Long engaged in a pattern of racketeering activity when he committed two acts of theft: by advertising and subsequently agreeing on two occasions within a period from mid-October until mid-November of 2004 that he would sell a specific NOS cross ram system in his possession upon the payment by Barone and by Stoltz of certain sums of money in excess of $10,000. Long's printed listing invited potential buyers to call a specific telephone number that is the same as that shown at the top of the letterhead on the printed statement and invoice for "Durability Plus Engines, Inc.," and the eBay listing stated that the system offered was "brand new." (Ex. 9, Ex. 11, Ex. 12). Further, when both Stoltz and Barone called that telephone number and spoke with Long, he told them that the cross ram system he offered for sale was *real* and *not a reproduction.* However, neither Barone nor Stoltz received an authentic 1969 NOS cross ram system after making payment as agreed upon. Both payment checks were made payable to Durability Engines Plus—which evidence before the jury indicated to be a corporation. Finally, Long admitted after having received the payments that he had never possessed a real NOS cross ram system. Sufficient evi-

dence supports the jury's conclusion that Long was guilty of the offense of corrupt business influence.

b. *Theft*

■ As Long correctly asserts, in order to establish theft, the State was required to prove that Long exerted unauthorized control over another's property with the intent to deprive the owner of the property's value or use. *See* I.C. § 35–43–4–2. Further, the trial court instructed the jury that "for theft, to exert control over property means to obtain or possess property," and "unauthorized control" means "either 1) without the other person's consent, 2) creating or confirming a false impression in the other person, or 3) promising performance that the person knows won't be performed." (Tr. 518; *see also* I.C. 35–43–4–1).

Long argues that the State failed to prove that he had the intent to deprive. He reminds us that at trial he denied ever having told either Stoltz or Barone that he had purchased several NOS systems years ago. He argues that at least one piece of evidence supports the proposition that Stoltz ordered a "new" part with the correct date stamped on it. He further claims that the evidence simply establishes that both Stoltz and Barone disagreed with Long as to the mechanism for resolving their differences of opinion about the value of what he provided them. In effect, Long asks that we reweigh the evidence and assess witness credibility. This is not our appellate role. *See McHenry*, 820 N.E.2d at 126.

■ "Intent" is "a mental function, and without a confession, it must be determined from a consideration of the conduct and the natural consequences of the conduct giving rise to the charge that the defendant committed theft." *Duren v. State*, 720 N.E.2d 1198, 1202 (Ind.Ct.App.

1999) (quoting *Brant v. State*, 535 N.E.2d 189, 191 (Ind.Ct.App.1989)), *trans. denied.* Accordingly, intent may be proven by circumstantial evidence, and it may be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Duren*, 720 N.E.2d at 1201.

Both Stoltz and Barone saw an eBay listing placed by Durability Plus Engines for a brand new NOS cross ram system with a certain GM stock number. Both contacted Durability Plus Engines by telephone and spoke with Long, who advised them that he was offering for sale a NOS cross ram system that was one of at least a dozen he had purchased in 1969 or shortly thereafter. Each man agreed to pay the price asked by Long for the NOS system, and each sent a check in payment to Durability Plus Engines. The payments were received and cleared their respective banks, but the offered brand new NOS cross ram systems were not sent to them by Long. By the time of trial, neither had received the product ordered; nor had they received a full refund of their payments. This evidence is sufficient to support the jury's conclusion that Long committed two counts of theft, one as to Stoltz and one as to Barone, beyond a reasonable doubt.

2. *Assistance of Counsel*

■ To prevail on a claim of ineffective assistance of counsel requires the defendant to show that (1) counsel's performance fell below an objective standard of reasonableness based upon prevailing professional norms, and (2) the deficient performance resulted in prejudice, *i.e.* there is a reasonable probability that the result of the trial would have been different but for counsel's unprofessional errors. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Strickland v. Washington*,

466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The claim of ineffective assistance must overcome the strongest presumption of adequate assistance. *Thomas v. State,* 797 N.E.2d 752, 754 (Ind.2003) (citing *Bieghler v. State,* 690 N.E.2d 188, 194 (Ind.1997), *cert. denied* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457).

■ Long first argues that his trial counsel was ineffective because the State had on the day before trial amended three of the seven theft charges in such a manner that the amended charges did not allege Long's "intent to deprive the other person of any part of its value or use." I.C. § 35–43–4–2. Long argues that his trial counsel "failed to notice" the missing allegation in the three amended informations, which missing allegation necessarily "reduced the charges from 'theft' to 'conversion.'" Long's Br. at 18. Long then argues that because conversion is not a predicate offense for the corrupt business influence offense, his trial counsel was ineffective for not objecting to the trial court's instruction to the jury—stating the State's specific allegations regarding Long's commission of seven offenses of theft.

Although the record presented for our review contains file-marked amended informations, nothing else in the record repeats the allegations as stated in these amended informations. All of the preliminary and final instructions to the jury stated that in each of the seven counts, Long was alleged to have acted "with the intent to deprive ..." (Tr. 127, 128, 129, 130; 514, 515, 516, 517). Regardless, we fail to see how Long was prejudiced. To convict Long of the offense of corrupt business influence, the State was required to prove

that Long committed *two* predicate felonies of theft. Whether the jury was instructed that Long had been charged with seven counts of theft, or with four counts of theft, the fact remains that the jury found he had committed two separate crimes of theft. Therefore, we find no reasonable probability that had trial counsel objected to the trial court's instruction as error because Long was only charged by the State with four predicate offenses, the result of his trial would have been different. *Grinstead,* 845 N.E.2d at 1031.

■ Long also argues that trial counsel was ineffective for not demanding an appropriate inquiry after a juror submitted a question asking why Long was being permitted to testify as an expert.[6] Long suggests that the question "reflects that at least one juror had begun forming opinions about Long's credibility." Long's Br. at 21. We note that before Long began testifying, the jury had heard repeated objections from Long's counsel to earlier witnesses' testimony concerning whether the witness could testify as an expert. With respect to Long's contention that the question reflects that an improper opinion of credibility had been formed by the juror, we find no such implication. Therefore, we do not find that counsel's performance fell below objective standards of reasonableness when counsel did not demand further inquiry based upon the juror's question.

■ Long also argues that inasmuch as corrupt business influence and theft are "specific intent crimes, by definition," trial counsel was ineffective for having failed to present evidence of his "mental condition" as part of his defense. Long's Br. at 25. He directs us to evidence submitted at the

---

6. In response, the trial court informed the jury that whether Long was "being accepted as an expert" was not a question to be posed to Long, and that the jury was "permitted to hear" the defendant testify and to weigh his testimony. (Tr. 456).

post-trial hearings on bail revocation and sentencing of his "life-long mental disabilities which impact his ability to process information." *Id.* Specifically, there was evidence of Long's hospitalization from December 4—13, 2004; the hospital record reflects that Long reported that he had attention deficit-hyperactivity disorder but had discontinued medication therefor, and his mother reported he had dyslexia and "cerebellar vestibular dysfunction" (App. 87); his discharge diagnosis was bipolar disorder. Printed information on these subjects was also submitted at sentencing, along with the report from Dr. Cyran noted earlier.

Long argues that the hospital information "was important because he was in the hospital ... during the precise period when he was dealing with Barone and Stoltz." Long's Br. at 25. However, the agreements made by Long with Barone and Stoltz took place earlier: Barone's check is dated October 26, 2004, and Stoltz's check is dated November 3, 2004. Further, as noted by the State, although the evidence did establish that Long suffered from certain mental health problems, it did not indicate that he was unable to distinguish the difference between right and wrong. Moreover, there is no evidence that Long informed trial counsel that he suffered from mental illness.[7]

Long's testimony at trial provided articulate and informative evidence concerning the specific automotive components that various persons had ordered from him. Testimony by Long contradicted the spe-cific allegations by certain complaining witnesses and led the jury to acquit him on five of the eight charges brought by the State. The trial court observed at sentencing that his testimony showed Long to be "highly intelligent"[8] and to have a "vast knowledge of automotive repair." (Tr. 675). Based upon the fact that counsel effectively elicited testimony from Long that resulted in his acquittal of five charges, and the lack of evidence in the record that trial counsel was aware that Long suffered from mental problems, we do not find that trial counsel's performance fell below an objective standard of reasonableness when he did not raise and present evidence of Long's mental health problems in his defense.

▮▮▮▮ Next, Long argues that trial counsel was ineffective because he failed to locate and subpoena witnesses who would have "corroborated his testimony" to the effect that he had a great reputation in the automotive industry. Long's Br. at 26. Evidence corroborating Long's reputation in the automotive industry would not be dispositive in refuting evidence that Long had acted as alleged with respect to Stoltz and Barone regarding the offered NOS cross ram system. Long also argues that his counsel was ineffective for having failed to strike the former county sheriff from the jury. Inasmuch as this potential juror stated under oath that he could "set aside thirty years of law enforcement experience, [his] knowledge of police officers, [his] command of police officers, and ... judge this case based on facts and the

---

7. Trial counsel did not represent Long after his trial; he had different counsel for his bail revocation and sentencing hearings. The only information in the record during trial counsel's representation that reflects on Long's health is as follows. During the trial, Long referred to having been hospitalized in Texas during early December, and a juror questioned why he had been hospitalized there. Long answered that it was "supposedly one of the best clinics in the country" and that his "mother found it on the internet." (Tr. 457).

8. Long testified that he scored 99, missing only one question, on his test for the Automotive Certification for Excellence.

law," Long cannot show that he sustained any prejudice from counsel's failure to peremptorily strike the juror. (Tr. 103).

### 3. Sentence

 Long argues that we should exercise our constitutional power to review and revise sentences, embodied in Appellate Rule 7(B), to find that his sentence is inappropriate. We cannot agree.

 Pursuant to Indiana Rule of Appellate Procedure 7(B), we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision," we find "that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In assessing the appropriateness of sentences under this rule, we review the aggravating and mitigating circumstances identified, or not so identified, by the trial court. *McMahon v. State*, 856 N.E.2d 743, 748 (Ind.Ct.App.2006). The trial court's finding of aggravating circumstances, or refusal to find mitigating circumstances, and its weighing and balancing of those circumstances is a matter of trial court discretion. *Id.*

 Here, the trial court found that Long had an extensive criminal history. Although Long minimizes the gravity and proximity in time of his criminal history, the fact remains that he had such a history dating back more than twenty years. Further, at least one of his convictions—altering an odometer—appears related to the automobile business. His other convictions—two counts of criminal conversion and two counts of forgery—are similar to theft, crimes involving dishonesty. In addition, Long was convicted of the following: refusal to identify, never receiving a license, operating while suspended, two no-valid-license offenses, resisting law enforcement, trespass, and yet another no-valid-license offense. Taken as a whole,

the foregoing evidences Long's continuing disregard for the law. The trial court's finding that Long's criminal history was an aggravating circumstance was not an abuse of discretion. *See Long v. State*, 865 N.E.2d 1031, 1035–36 (Ind.Ct.App.2007) (abuse of discretion remains standard of review for trial court's finding, weighing, balancing of circumstances).

 The trial court did not find Long's mental health problems to be a mitigating circumstance. Dr. Cyran reported that despite certain mental problems, Long had been able to function productively. The trial court also noted evidence of Long's intelligence and automotive knowledge and that Long had failed to comply with treatment for his mental problems. Thus, the trial court did not abuse its discretion when it did not find Long's mental health problems to be a mitigating circumstance. Because the trial court engaged in an evaluative process and found a valid aggravating circumstance and no significant mitigating circumstance, we do not find that the trial court abused its discretion when it enhanced the standard sentences imposed for Long's convictions.

Regarding the nature of the offenses, the evidence established that Long offered on eBay to sell a rare set of automotive parts for a 1969 Camaro. Long used his automotive knowledge to convince Stoltz and Barone that he could provide this highly prized new automotive system and quoted a specific price for it. After both men asked Long appropriate questions to verify that they could rely on what his eBay listing offered, they agreed to pay the quoted price and sent Long full payment for the new system offered. Long did *not* provide the offered system, and despite the evidence that he had never actually possessed a new system, he continued to defend and try to justify his

failure to provide one. There were two separate victims, and the offenses were perpetrated in a manner that reflected a pattern of false representations by Long.

Regarding Long's character, his long criminal history reflects a disregard for complying with the rules of society. After each of his victims complained, Long initially promised to correct his wrong. Again and again he promised, but he never fulfilled his promises. When one victim asked for his money back, Long responded, "Not gonna happen." (Tr. 198). Further, Long's trial testimony reflected a continuing effort to use his extensive automotive knowledge to redefine terms used in the automotive trade [9] in such a way as to deflect criminal consequences.

The trial court enhanced the sentences imposed for the theft and corrupt business influence convictions. However, it did not order all of the sentences to be served consecutively. Thus, it did not impose the maximum sentence possible. We do not find the sentence imposed to be inappropriate in light of the nature of the offenses and the character of the offender.

### 4. *Restitution*

Finally, Long argues that the trial court's order that he pay $4,000 in restitution to Stoltz must be reversed because the evidence does not support this amount. We disagree.

A trial court's order of restitution is a matter within its sound discretion, and we will reverse only upon a showing of an abuse of that discretion. *Henderson v. State*, 848 N.E.2d 341, 346 (Ind.Ct.App. 2006); *Myers v. State*, 848 N.E.2d 1108, 1109 (Ind.Ct.App.2006). An abuse of discretion occurs if the trial court's decision is

clearly against the logic and effects of the facts and circumstances before it. *Henderson*, 848 N.E.2d at 346. Pursuant to Indiana law, "in addition to any sentence imposed" for a criminal offense, the trial court is authorized to order "restitution to the victim of the crime." Ind.Code § 35–50–5–3. The amount of restitution ordered must reflect the actual loss suffered by the victim. *Myers*, 848 N.E.2d at 1109.

As the State correctly asserts, Long did not object to the trial court's admission of evidence from Stoltz as to the amount of his loss. The defendant's failure to make a specific and timely objection to the trial court's receipt of evidence concerning the amount of restitution constitutes a failure to preserve the matter and waives it as an issue for appeal. *Kellett v. State*, 716 N.E.2d 975, 981 (Ind.Ct.App. 1999).

Waiver notwithstanding, Stoltz submitted his statement seeking restitution in the amount of $4,000. Attached to his statement was a letter from Guinn's Engineering, along with information indicating that its principal, Wayne Guinn, had been involved with "the First Generation Camaro for over 35 years." (Green App. at 33). The letter from Guinn opined that a used cross ram in excellent condition would be worth $5,500–$7,500. Stoltz paid Long $10,100 for a NOS cross ram system. Stoltz testified that he had received (and retained in his possession at the time of trial) only a "used" cross ram. (Tr. 214). If the trial court valued the used cross ram that Stoltz received at $6,100 after having paid $10,100 for a new one, his loss would be $4,000. A $6,100 value for the cross ram that Stoltz received was within the

---

**9.** Long insisted that the acronym "NOS" meant "new old style," a meaning which no other witness had ever heard.

range of the evidence presented. Therefore, the trial court did not abuse its discretion when it ordered Long to pay $4,000 in restitution to Stoltz.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.