## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 19 2015, 9:56 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Stanley F. Wruble III
Wruble & Associates
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Graham T. Youngs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jamie Rice,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 19, 2015

Court of Appeals Case No.
71A03-1407-CR-265

Appeal from the St. Joseph Superior Court
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1404-FD-23

**Bradford, Judge.**

# Case Summary

[1]     On the evening of January 13, 2014, Appellant-Defendant Jamie Rice went to the home of his ex-girlfriend, Kelly Hostetler. Upon arriving at Hostetler's

home, Rice went into Hostetler's detached garage and rifled through her unlocked vehicle. Rice took the car key out of the ignition, a makeup bag containing makeup, and two medication bottles out of the vehicle and placed the items in his pockets. Rice left Hostetler's property once she detected his presence. Appellee-Plaintiff the State of Indiana ("the State") subsequently charged Rice with Class D felony theft. Rice was convicted of this charge following a jury trial. The trial court subsequently sentenced him to a term of three years, with two years served in community corrections and one year suspended to probation.

On appeal, Rice contends that the State failed to present sufficient evidence to sustain his conviction. Concluding otherwise, we affirm.

# Facts and Procedural History

Rice and Hostetler had been involved in a romantic relationship. However, as of January 13, 2014, Rice no longer lived with Hostetler and was "not allowed" to be at Hostetler's residence. Tr. p. 123. At approximately 6:30 p.m. on January 13, 2014, Rice went to Hostetler's home. Upon arriving at Hostetler's home, Rice parked his moped near Hostetler's back porch and entered Hostetler's detached garage without first knocking on any of the doors of Hostetler's home.

Hostetler's 2006 Chevy Malibu was parked, unlocked, inside her garage. Hostetler had left her key to the vehicle inside the vehicle. She had also left two

different medications, one of which she took three times a day, papers, clothing, and a makeup bag containing makeup in her vehicle. None of Rice's possessions where in the vehicle. Hostetler had not given Rice permission to enter her garage or to take any of her personal possessions from her vehicle.

[5] At some point, Hostetler walked through the kitchen of her home and noticed that a light was on in her garage. Hostetler had not left the light on in her garage. Hostetler also saw Rice's moped near her back porch. Hostetler, who had not given Rice permission to enter her garage, then "opened the door and … yelled out the door … 'Jamie, you need to get out of my garage, you need to leave, you're not allowed to be here.'" Tr. p. 125.

[6] Hostetler "instantly" shut the door to her home after Rice appeared from within the garage because she did not "feel safe around [Rice]." Tr. p. 125. Hostetler was also concerned about arguing with Rice in front of her children, who were inside her home. Hostetler had previously seen Rice upset and believed that he appeared upset on January 13, 2014. Hostetler threatened to call the police if Rice did not leave her property. Rice initially appeared to be leaving, but turned around and "started screaming" at Hostetler. Tr. p. 143. Hostetler then called the police.

[7] Lakeville Police Officer Jess Fisher and Police Chief Patrick Howard responded to Hostetler's call. Hostetler informed Officer Fisher and Chief Howard that Rice had likely traveled to his father's house, which was located approximately three miles from Hostetler's home. Upon arriving at Rice's father's home,

Officer Fisher and Chief Howard observed Rice through a window in the garage. Rice was parking his moped. When Officer Fisher and Chief Howard knocked on the garage door, identified themselves, and asked to speak with Rice, Rice retorted "Who the 'F' is it?" Tr. p. 154. Officer Fisher and Chief Howard identified themselves three times before Rice's father came out of the house and opened the garage door. Rice then met with Officer Fisher and Chief Howard. Rice "seemed agitated," smelled of alcohol, and acted aggressively toward Officer Fisher and Chief Howard. Tr. p. 154.

[8] Officer Fisher and Chief Howard placed Rice in handcuffs and informed him of his *Miranda*[1] rights. Rice admitted to Officer Fisher and Chief Howard that he went to Hostetler's home "to try to get his stuff." Tr. p. 157. Rice was "uncooperative" and "aggressive" as he was led to the patrol vehicle. Tr. p. 163. Before Rice was placed in the patrol vehicle, Officer Fisher searched Rice's person. During this search, Officer Fisher found makeup, a car key, and two bottles of medication. Both of the bottles of medication had Hostetler's name on them.

[9] On January 15, 2014, the State charged Rice with Class D felony theft and Class D felony intimidation. Following a jury trial, Rice was found guilty of Class D felony theft and not guilty of Class D felony intimidation. On July 2, 2014, the trial court sentenced Rice to three years, with two years served in

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

community corrections and one year suspended to probation. This appeal follows.

# Discussion and Decision

[10] Rice contends that the evidence is insufficient to sustain his conviction for Class D felony theft.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

In charging Rice with Class D felony theft, the State alleged that "[o]n or about the 13th day of January, 2014, … [Rice] did knowingly exert unauthorized control over the property of [Hostetler], to-wit: various items of personal property, by possessing same, with the intent to deprive [Hostetler] of any part of the use or value of the property." Appellant's App. p. 141. The offense of theft is governed by Indiana Code section 35-42-4-2, which, on the date in question, read as follows: "(a) A person who knowingly or intentionally exerts unauthorized control over property of another person with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." Thus, in order to prove that Rice committed theft, the State had to show that Rice (1) knowingly exerted unauthorized control (2) over the personal property of Hostetler, (3) with the intent to deprive Hostetler of the property's value or use.

In challenging the sufficiency of the evidence to sustain his theft conviction, Rice concedes that, at the time the items in question were recovered, the items were found in his possession. He argues, however, that the State failed to prove that he intended to deprive Hostetler of her possessions.

> "Intent" is "a mental function, and without a confession, it must be determined from a consideration of the conduct and the natural consequences of the conduct giving rise to the charge that the defendant committed theft." *Duren v. State*, 720 N.E.2d 1198, 1202 (Ind. Ct. App. 1999) (quoting *Brant v. State*, 535 N.E.2d 189, 191 (Ind. Ct. App. 1989)), *trans. denied*. Accordingly, intent may be proven by circumstantial evidence, and it may be inferred from a defendant's conduct and the natural and usual sequence to which such conduct

logically and reasonably points. *Duren*, 720 N.E.2d at 1201.

*Long v. State*, 867 N.E.2d 606, 614 (Ind. Ct. App. 2007). On appeal, a court "need not find that the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the verdict." *Lovell v. State*, 474 N.E.2d 505, 507 (Ind. 1985) (citing *McCann v. State*, 466 N.E.2d 421, 423 (Ind. 1984)).

[13]    Upon review, we conclude that the State presented sufficient evidence from which the jury could reasonably infer that Rice intended to deprive Hostetler of the value and use of her personal possessions, *i.e.*, her makeup bag, car keys, and medications. The record demonstrates that as of January 13, 2014, Rice no longer lived with Hostetler and was "not allowed" to be at Hostetler's residence. Tr. p. 123. Although Rice claimed he went to Hostetler's residence on the night in question because he wanted to speak to Hostetler or to "try to get his stuff", tr. p. 157, Rice sought to avoid detection by parking his moped near Hostetler's back porch and entering Hostetler's detached garage without first knocking on any of the doors of Hostetler's home. Hostetler only noticed Rice's presence because she happened to be walking through the kitchen of her home when she noticed that a light was on in her garage and saw Rice's moped near her back porch. Hostetler, who had not given Rice permission to enter her garage, then "opened the door and … yelled out the door … 'Jamie, you need to get out of my garage, you need to leave, you're not allowed to be here.'" Tr. p. 125. By the time Rice left Hostetler's garage, he had placed Hostetler's

possessions in his pockets. He then returned to his father's home, taking Hostetler's possessions with him.

[14] We have previously concluded that taking someone's property from their house and hiding it in your own vehicle is evidence of intent to deprive that person of her use of the property. *McIntosh v. State*, 638 N.E.2d 1269, 1277-78 (Ind. Ct. App. 1994). We can think of no reason why taking someone's property out of the person's vehicle, without the person's permission, and taking it to the residence where you are living would not similarly be evidence of intent to deprive that person of her use of her property. Accordingly, because Rice took Hostetler's property from her vehicle without permission, placed the property in his pockets, removed it from Hostetler's garage, and took it to his father's home, we conclude that the State provided sufficient evidence from which the jury could reasonably infer that Rice intended to deprive Hostetler of the value and use of her property. Rice's claim to the contrary effectively amounts to an invitation to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.[2]

---

[2] Furthermore, to the extent that Rice argues that the evidence is insufficient to sustain his conviction because the State failed to prove motive, we conclude that because motive was not included in the statutory element of theft, the State was not required to prove motive in order to obtain a conviction. *See generally Coates v. State*, 534 N.E.2d 1087, 1093 (Ind. 1989) (providing that "[m]otive is not an element of robbery and, therefore, is not required to be proven for a conviction"); *Armstrong v. State*, 429 N.E.2d 647, 654 (Ind. 1982) (providing that the fact that the evidence showed no motive for the appellant to kill the victim does not negate any element of the crime of attempted murder because motive is not an element of murder).

The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.