**Johnnie STOKES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0905–CR–433.

Court of Appeals of Indiana.

March 17, 2010.

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Johnnie Stokes appeals his convictions for one count of class A felony attempted robbery, one count of class B felony robbery, five counts of class B felony attempted robbery, and one count of class C felony criminal recklessness. We affirm in part, reverse in part, and remand for resentencing.

### Issues

Stokes presents two issues for our review which we restate as:

I. Whether the trial court abused its discretion when it denied Stokes's motion for a mistrial; and

II. Whether there was sufficient evidence to support Stokes's six attempted robbery convictions.

### Facts and Procedural History

The relevant facts indicate that on the evening of December 18, 2008, several people were present at Big Engine Entertainment ("Big Engine"), a recording studio in Indianapolis owned by Gregory Arnold, Jr. At approximately 7:00 p.m., Shontez Simmons, an employee of Big Engine, went outside the studio building to smoke a cigarette. While outside, she saw Antonio Walker ("Antonio") and Antwane Walker ("Antwane"), two of her cousins, arrive and enter the building. The two men went into the building and spoke briefly to another Big Engine employee, Edriese Phillips. Antonio and Antwane then left the building. Minutes later, Antonio and Antwane returned to the building accompanied by Stokes, Curtis Stokes ("Curtis"), Terry Lynem, and an unidentified man referred to as Marcus. Stokes was carrying a black trash bag that contained an assault rifle.

Once inside the building, Antonio and Antwane entered the recording room

where Arnold, Jr. was working. Also present in the room were Andrew Steele, Fred Winfield, and Shantell Williams. Another individual, Earnest Simmons ("Earnest"), was in an adjacent recording booth. Antonio greeted Arnold, Jr. and then asked to speak to Steele in the hallway. Steele walked to the hallway escorted by Antonio and followed by Antwane. Once in the hallway, Antonio pointed a handgun in Steele's face and said, "Get down, you know what this is." Tr. at 479. Meanwhile, Stokes, who was already in the hallway, pulled the assault rifle out of the trash bag and began firing it, also saying, "Get down, you know what this is." *Id.* at 480. Arnold, Jr. rushed to the door of the recording room and, after a struggle with Antwane, managed to close the door to the room. Arnold, Jr. then retrieved a handgun and, thereafter, slightly opened the door and fired his gun into the hallway at Antonio. Elsewhere in the building, Lynem and Marcus grabbed Phillips. At gunpoint, Lynem and Marcus demanded money from Phillips. Phillips refused, and Lynem struck Phillips with his weapon. Lynem and Marcus took $200 from one of Phillips's pockets.

Stokes, Antwane, Antonio, Lynem, Curtis, and Marcus left the building, with Antwane running backward firing a semi-automatic handgun toward the building as he left. After several people present had called 911, Big Engine employee Collin Moore was found in a hallway suffering from a gunshot wound to his abdomen. Soon thereafter, police officers dispatched to the scene apprehended Antwane, Lynem and Curtis walking together near the studio. Eight days after the incident, Stokes called Arnold, Jr. and offered him

$5000 in exchange for Arnold, Jr. agreeing not to "press charges." *Id.* at 524.

The State charged Stokes and each of his four co-defendants with multiple criminal counts. Specifically, the State charged Stokes with one count of class A felony attempted robbery, one count of class B felony robbery, eight counts of class B felony attempted robbery, one count of class B felony unlawful possession of a firearm by a serious violent felon, and one count of class C felony criminal recklessness. A jury trial was held on March 9 through 13, 2009, for all five defendants. At the close of the State's evidence, the trial court granted Stokes's motion for a directed verdict on three of the class B felony attempted robbery counts. The jury found Stokes guilty on all remaining counts.[1] Following a sentencing hearing, the trial court imposed an aggregate sentence of seventy-four years. This appeal ensued.

### Discussion and Decision

#### I. *Motion for Mistrial*

We address first Stokes's contention that the trial court abused its discretion when it denied his motion for a mistrial. Whether to grant or deny a motion for a mistrial is a decision left to the sound discretion of the trial court, as that court is in the best position to assess the circumstances of an error and its probable impact upon the jury. *Lucio v. State*, 907 N.E.2d 1008, 1010 (Ind.2009). On appeal, we will reverse only upon an abuse of that discretion. *Id.* To prevail on appeal from the denial of a motion for a mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not

---

1. Stokes waived a jury trial on the unlawful possession of a firearm by a serious violent felon. Following a bench trial, the court con-

victed Stokes of that charge as well. Stokes does not challenge that conviction on appeal.

have been subjected. *Alvies v. State,* 795 N.E.2d 493, 506 (Ind.Ct.App.2003), *trans. denied.* The gravity of the peril is assessed by the probable persuasive effect of the misconduct upon the jury's decision rather than upon the degree of impropriety of the conduct. *Id.* "A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error." *Warren v. State,* 725 N.E.2d 828, 833 (Ind.2000).

Here, Stokes and his co-defendants moved for a mistrial after learning that a court deputy had inadvertently left in the jury room certain documents that indicated that Stokes and his co-defendants were incarcerated pending trial. Upon learning of the jurors' potential exposure to the documents, the trial court appropriately interviewed each juror separately about his or her exposure to the documents and questioned each juror, under oath, as to whether the documents would affect his or her ability to be fair and impartial. Some of the jurors had seen the documents, and others did not become aware of the documents until questioned by the court. Several jurors indicated that they had already assumed the defendants were incarcerated pending trial because the five defendants were accompanied by five sheriff's deputies during earlier proceedings. Each juror assured the trial court that his or her decision would not be affected by knowledge of Stokes's and his co-defendants' incarceration. Accordingly, the trial court denied Stokes's motion for a mistrial.

Under the circumstances, we cannot say that exposure to the documents had any probable persuasive effect on the jury's decision. As noted by the trial court, given the serious nature of the charges against Stokes and his co-defendants, a reasonable person would expect that the defendants would likely be incarcerated pending trial. Stokes has not demonstrated that he was placed in a position of grave peril as a result of the jurors' exposure to evidence that he was incarcerated pending trial. *See Davis v. State,* 770 N.E.2d 319, 326 (Ind.2002) (denial of motion for mistrial proper absent showing of actual harm). Given each juror's assurance of impartiality, the trial court did not abuse its discretion when it denied Stokes's motion for a mistrial.

## II. Sufficiency of the Evidence

Stokes next contends that the evidence is insufficient to support his six attempted robbery convictions. We agree with Stokes in part and disagree in part.

■■■ Upon review of a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *McHenry v. State,* 820 N.E.2d 124, 126 (Ind.2005). We will affirm a conviction unless, considering only the evidence and reasonable inferences favorable to the verdict, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Drane v. State,* 867 N.E.2d 144, 147 (Ind.2007). It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* Instead, the evidence is sufficient if an inference may reasonably be drawn from it to support the jury's verdict. *Id.*

■■■ The jury convicted Stokes, in separate counts, of the attempted robbery of Steele, Earnest,[2] Arnold, Jr., Winfield, and Williams, as class B felonies, and the attempted robbery of Moore, as a class A felony. To convict Stokes of the five class B felony attempted robberies, the State

**2.** While the charging information listed "Ernest Michael Phillips" as the victim in this count, the trial court granted the State's motion to amend the information to state the victim's true name of "Earnest Michael Simmons." Tr. at 632–33.

was required to prove beyond a reasonable doubt that Stokes, either directly or as an accomplice,[3] (1) engaged in conduct that constituted a substantial step toward (2) the knowing or intentional (3) taking of property from the person or presence of Steele, Earnest, Arnold, Jr., Winfield, and Williams, (4) by using or threatening the use of force on each of them or putting each of them in fear, (5) while armed with a deadly weapon. *See* Ind.Code §§ 35–41–5–1 and 35–42–5–1. To convict Stokes of class A felony attempted robbery, the State was required to prove beyond a reasonable doubt that Stokes (1) engaged in conduct that constituted a substantial step toward, (2) the knowing or intentional, (3) taking of property from the person or presence of Moore, (4) by putting him in fear or by using or threatening the use of force on him, (5) while armed with a deadly weapon, (6) which resulted in serious bodily injury to Moore. *See id.*[4]

■■ On appeal, Stokes claims that the State presented insufficient evidence that he intended to rob any of the alleged attempted robbery victims. We slightly reframe Stokes's argument, and reiterate that the State was required to prove that Stokes attempted a knowing or intentional

robbery of each of the alleged victims.[5] Another panel of this Court recently found insufficient evidence to support four of the five class B felony attempted robbery convictions of one of Stokes's co-defendants, concluding that the perpetrators lacked the requisite intent to rob those four alleged victims. *See Curtis Stokes v. State,* 919 N.E.2d 1240 (Ind.Ct.App.2010). We agree with the conclusion of that panel but go one step further and also reverse Stokes's class A felony attempted robbery conviction.

■■ Knowledge and intent are both mental states and, absent an admission by the defendant, the trier of fact must resort to the reasonable inferences from both the direct and circumstantial evidence to determine whether the defendant has the requisite knowledge or intent to commit the offense in question. *Johnson v. State,* 837 N.E.2d 209, 214 (Ind.Ct.App.2005), *trans. denied.* Accordingly, knowledge or intent may be proven by circumstantial evidence, and it may be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Long v. State,* 867 N.E.2d 606, 614 (Ind.Ct.App. 2007).

---

**3.** Under Indiana law, an accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence of their concerted action. *Alvies v. State,* 905 N.E.2d 57, 61 (Ind.Ct.App.2009); *see* Ind.Code § 35–41–2–4 (A person who knowingly or intentionally aids, induces, or causes another to commit an offense commits that offense . . .). In this appeal, Stokes does not challenge his liability as an accomplice. Stokes challenges only the sufficiency of the evidence as to his intent to rob each of the alleged attempted robbery victims.

**4.** Our supreme court has noted that the knowing or intentional mens rea applies to the attempted crime itself, here the robbery, and not to the substantial step. *See Richeson v. State,* 704 N.E.2d 1008, 1010 n. 4 (Ind.1998).

**5.** Other than the crime of attempted murder, our supreme court has concluded that the attempt statute does not require that the State prove that the defendant specifically "intended" to commit the attempted crime. *Richeson,* 704 N.E.2d at 1010 (citing *Spradlin v. State,* 569 N.E.2d 948 (Ind.1991)). Accordingly, the statutes defining attempt and robbery do not require the State to prove that the defendant "intended" to commit robbery. *Henderson v. State,* 825 N.E.2d 983, 987 (Ind. Ct.App.2005), *trans. denied.* Instead, the State must prove that the defendant took a substantial step to accomplish a knowing or intentional robbery. *See Richeson,* 704 N.E.2d at 1010.

Looking at the circumstantial evidence and the reasonable inferences of the co-defendants' collective knowledge or intent and, more accurately, their knowledge or intent as it relates to each alleged victim, we agree with the panel in *Curtis Stokes v. State* that the State failed to present sufficient evidence that the co-defendants, including Stokes, had the requisite knowledge or intent to rob each individual present in the building. Indeed, the trial court granted directed verdicts with regard to three alleged victims who, due to their lack of proximity in the building to the co-defendants, did not hear any commands from the perpetrators or have any specific interactions with the perpetrators that would indicate that the perpetrators intended to rob those individuals.

Nevertheless, the trial court did not grant a directed verdict with regard to the attempted robbery of Earnest. However, as noted by the other panel, Earnest was in a sound proof recording booth at the time the commands to "get down" were made and testified that he did not hear those commands. Once Earnest became aware that gunshots had been fired, Earnest immediately jumped out a window. We conclude that, as with the other victims who were not in close proximity to the co-defendants, the evidence does not support a reasonable inference that Stokes intended to specifically rob Earnest, and we reverse Stokes's conviction on that count.

■ Similarly, rather than make demands of everyone inside Arnold, Jr.'s recording room, Antonio and Antwane specifically addressed Steele, escorted Steele outside the room and into the hallway, pointed a gun in Steele's face, and ordered him to "[g]et down, you know what this is." Tr. at 479. This evidence supports a reasonable inference that the codefendants knowingly or intentionally singled out Steele to rob. Therefore, the evidence is sufficient to support Stokes's conviction for the attempted robbery of Steele.

While the other individuals who remained in the office heard the commands to "[g]et down, you know what this is," Antonio and Antwane did not single out anyone else in the room other than Steele, despite a clear opportunity to do so. That evidence is insufficient to show that the co-defendants, including Stokes, attempted a knowing or intentional robbery of the other occupants of the room. Accordingly, the evidence does not support Stokes's convictions for the attempted robberies of Arnold, Jr., Winfield, and Williams, and we reverse those convictions.

■ While we reverse Stokes's convictions for the attempted robberies of Earnest, Arnold, Jr., Winfield, and Williams, as did the other panel, we disagree with the other panel's reasoning with regard to the attempted robbery of Moore and find the evidence insufficient to support Stokes's conviction for the class A felony attempted robbery of Moore. Moore did not testify at trial, and the evidence was incredibly sparse regarding Moore's interactions with the perpetrators. The only evidence in the record was a stipulation that, had Moore appeared at trial, he would have testified that he "was ordered" to get down by individuals he did not recognize, that he heard multiple gunshots, and that he suffered a gunshot wound to his abdomen. Tr. at 627. There is no evidence from which a reasonable inference could be drawn that Moore was singled out or directly targeted by the perpetrators to be robbed. Rather, it appears that Moore was simply in the wrong place at the wrong time and got caught in the crossfire. Moore was in a position akin to the other four victims regarding whom we have reversed Stokes's attempted robbery convictions. The evidence does not support a reasonable inference that the perpe-

trators, including Stokes, intended to specifically rob Moore. Thus, we hold that the State presented insufficient evidence to support Stokes's conviction for the attempted robbery of Moore, and we reverse that conviction.[6]

 As noted by the other panel, while the co-defendants may well have confined the alleged victims, "[t]his is not a case where gunmen drew weapons on several people in the same room and ordered everyone, directly, to get down on the ground before an attempted robbery was interrupted." *Curtis Stokes*, 919 N.E.2d at 1248. Merely pointing a gun in the air and commanding all in earshot to get down, without more, is not sufficient to support a reasonable inference that the perpetrators intended to rob each of the individuals present. Rather, the co-defendants' conduct and the reasonable inferences to be drawn from that conduct indicate only that Stokes and his co-defendants singled out Steele, but were interrupted in their attempt to rob Steele by Arnold, Jr.'s gunfire. Therefore, the evidence is sufficient to support but one of Stokes's attempted robbery convictions, his attempted robbery of Steele.[7]

## CONCLUSION

Stokes has failed to demonstrate that he suffered grave peril as a result of the jurors' knowledge that he was incarcerated pending trial. Therefore, the trial court did not abuse its discretion when it denied Stokes's motion for a mistrial. The State presented insufficient evidence to support Stokes's convictions for the attempted robberies of Earnest Simmons, Gregory Arnold, Jr., Fred Winfield, Shantell Williams, and Collin Moore, and we reverse his convictions on those five counts. We affirm Stokes's remaining convictions. Given that Stokes's class B attempted robbery sentences were ordered to be served concurrent with his sentences on other counts, our decision to reverse those convictions does not affect Stokes's aggregate sentence. However, because the trial court ordered Stokes's sentences on all counts to be served either consecutive to or concurrent with his class A attempted robbery conviction that we have now reversed, we remand to the trial court for resentencing.

Affirmed in part, reversed in part and remanded.

RILEY, J., concurs.

VAIDIK, J., concurs in part and dissents in part with separate opinion.

VAIDIK, J., concurring in part and dissenting in part.

I respectfully dissent from the majority's decision to reverse Stokes's conviction for the Class A felony attempted robbery of Moore. The evidence in the record is that Moore was in the recording studio hallway when he was ordered to "get down" by individuals he did not recognize and heard multiple gunshots, one of which struck him in his lower abdomen. I agree

---

**6.** Clearly, the evidence highlighted by the dissent with regard to Moore would have been sufficient to support a conviction against Stokes for class C felony battery with a deadly weapon. *See* Ind.Code § 35–42–2–1(a)(3). For whatever reason, the State chose not to charge Stokes with that offense. We cannot let a conviction stand for class A attempted robbery merely because Moore could have been convicted of class C felony battery. As previously stated, there was no evidence that Moore was directly singled out for any purpose, much less to be robbed.

**7.** Stokes and his co-defendants also singled out Phillips, and that robbery was completed. The jury convicted Stokes of the class B felony robbery of Phillips. Stokes does not challenge the sufficiency of the evidence as to that conviction on appeal.

with the analysis of the *Curtis Stokes* Court that the fact that Moore "was singled out and directly ordered to 'get down' supports a reasonable inference that the perpetrators intended to rob him, but were interrupted when gunfire erupted." 919 N.E.2d at 1248. Because I believe that these actions constitute a substantial step toward the knowing or intentional taking of property from the person or presence of Moore, I would affirm Stokes's conviction for Class A felony attempted robbery.