## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Paula M. Sauer<br>Danville, Indiana | Curtis T. Hill<br>Attorney General of Indiana |
| | Matthew R. Elliott<br>Deputy Attorney General<br>Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher C. Brown,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 10, 2017<br><br>Court of Appeals Case No.<br>32A01-1606-CR-1527<br><br>Appeal from the Hendricks Circuit Court<br><br>The Honorable Daniel F. Zielinski, Judge<br><br>Trial Court Cause Nos.<br>32C01-1506-F5-68<br>32C01-1506-F5-69 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Christopher Brown was convicted of two counts of child seduction as Level 5 felonies. Brown appeals his convictions, raising the sole issue of whether the evidence is sufficient to sustain his convictions. Concluding the evidence is sufficient, we affirm.

# Facts and Procedural History

[2] Between 2013 and 2015, Plainfield High School employed Brown, an accomplished musician, as a part-time assistant director of the school's band. As a part-time director of the band, Brown worked with the jazz band, concert band, marching band, and show choir band ("Show Band"). The Show Band provides musical accompaniment to the school's show choir ("Choir").[1] Students R.C. and M.H. were members of the Choir and Brown had a sexual relationship with both students. At the time, R.C. and M.H. were under the age of eighteen. In June 2015, M.H. reported her relationship with Brown to a school guidance counselor. During an investigation into the report, the Plainfield Police Department discovered Brown also had a sexual relationship with R.C.

---

[1] Jannelle Heaton, the school's Choir director, explained the Show Band is made up of volunteers from the school's band department and plays the music while the Choir sings. Heaton asked Brown to work with the Show Band and Brown obliged. Although Brown neither instructed nor supervised Choir students, the record indicates Brown often interacted with Choir students, attended Choir auditions, and attended all of the dress rehearsals between the Choir and the Show Band.

[3] On June 30, 2015, the State charged Brown with two counts of child seduction. Specifically, the State alleged Brown had a professional relationship with the students knowing the students were at least sixteen, but less than eighteen, years of age. Prior to trial, the parties stipulated to the following facts:

> Parties agree [M.H.]and RC's testimony would be:
> a. That each witness was over 16, less then [sic] 18 years of age
> b. That each were students at Plainfield High School
> c. That each were involved with the school show choir
> d. That each had consensual sexual intercourse or other consensual sex acts with [Brown]
> e. That they were not forced or rewarded in any way for said sex acts or intercourse[.]

State's Exhibit 1.

[4] At trial, M.H. testified she was a member of the Choir during her sophomore and junior years. During her sophomore year, M.H. met Brown during a dress rehearsal prior to a Choir competition. The two became friends, and by the end of M.H.'s sophomore year, they began speaking to one another outside of school via cell phone; Brown would often discuss how lonely he was, that he was going to get a divorce, and how he wanted to hurt himself. Brown also stated he loved M.H. and M.H. thought she loved him. During M.H.'s junior year, the first sexual encounter between M.H. and Brown occurred after school in a band storage room during Choir auditions. Thereafter, Brown and M.H. had two additional sexual encounters in different areas of the school.

[5] R.C. testified she worked as a crew member for the Choir during her junior year. R.C. first met Brown during breaks between competitions. At some point, R.C. requested Brown be her friend on Facebook and Brown accepted. The two then began messaging via Facebook and numerous other cell phone applications because Brown "didn't want his wife to find out." Transcript at 112. The relationship then evolved and the two began "flirting with each other" and sending "inappropriate messages to each other." *Id*. at 111. R.C. also described the first inappropriate encounter, which occurred at the school, as hugging and kissing. Eventually, Brown and R.C. had sexual intercourse on at least two occasions. One instance occurred at R.C.'s house and another occurred at "this hot tub place where . . . he gave lessons to kids." *Id*. at 113. At some point, Brown expressed his intent to divorce his wife, marry R.C., and have children with her.

[6] At the conclusion of evidence, the trial court found Brown guilty and entered judgment of conviction on both counts of child seduction as Level 5 felonies. Brown now appeals his convictions.

# Discussion and Decision

## I. Standard of Review

[7] In reviewing the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We consider only the evidence supporting the judgment and any reasonable inferences drawn therefrom. *Id*. We will affirm

the conviction "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (citation omitted).

# II.  Child Seduction

[8]     The State charged Brown with child seduction pursuant to Indiana Code section 35-42-4-7(n), which provides,

> A person who:
>
>> (1) has or had a professional relationship with a child at least sixteen (16) years of age but less than eighteen (18) years of age whom the person knows to be at least sixteen (16) years of age but less than eighteen (18) years of age;
>>
>> (2) may exert undue influence on the child because of the person's current or previous professional relationship with the child; and
>>
>> (3) uses or exerts the person's professional relationship to engage in sexual intercourse, other sexual conduct . . . or any fondling or touching with the child with the intent to arouse or satisfy the sexual desires of the child or the person;

commits child seduction.[2]

On appeal, Brown argues the evidence is insufficient to establish he had (1) a professional relationship with M.H. and R.C., and (2) knowledge of their age. We address each argument in turn.

## A. Professional Relationship

[9] A person has a professional relationship with a child if

> (1) the person:
>
>> (A) has a license issued by the state or a political subdivision on the basis of the person's training and experience that authorizes the person to carry out a particular occupation; or
>>
>> (B) is employed in a position in which counseling, supervising, instructing, or recruiting children forms a significant part of the employment; and
>
> (2) the person has a relationship with a child that is *based on the person's employment* or licensed status as described in subdivision (1).

---

[2] The crime is a Level 6 felony if the person engaged in fondling or touching with intent to arouse or satisfy the sexual desires of either the person or the child. The crime is elevated to a Level 5 felony if the person engaged in sexual intercourse or other sexual conduct with the child as defined in Indiana Code section 35-31.5-2-221.5. Brown does not challenge his convictions on this basis.

Ind. Code § 35-42-4-7(i) (emphasis added).  Brown contends the State failed to establish he had a professional relationship with the victims, arguing his relationships with M.H. and R.C. were not based on his employment at the school.[3]  Specifically, Brown maintains there is not a significant causal nexus between his employment as a part-time director of the band and his relationships with two members of the Choir.  In support of his claim, Brown points to evidence that M.H. and R.C. were members only of the Choir, he was not a director of the Choir, he did not supervise or instruct members of the Choir, he did not have authority over members of the Choir, and he had no ability to either reward or punish members of the Choir.  The State cites to evidence that Brown was employed as a director of the band, Brown met the victims at the school while performing his directorial duties, and the first sexual encounters with both victims occurred at the school and argues this evidence is sufficient to establish Brown's relationships with the victims were based on his employment.  We agree with the State.

[10]     The State presented evidence Brown was employed as a part-time director of the school's band.  As a result of his employment, Brown was asked to participate as the director of the Show Band and Brown often interacted and established friendly relationships with members of the Choir.  Brown capitalized on his relationships with M.H. and R.C. and used social media

---

[3] Brown concedes the State presented sufficient evidence to establish he was employed in a position in which counseling, supervising, instruction, or recruiting children formed a significant part of his employment.  *See* Appellant's Brief at 12.

applications to communicate with them outside of school. Both M.H. and R.C. had their first inappropriate encounters with Brown while at school. Specifically, M.H.'s first sexual encounter occurred in the band's storage room while students were auditioning for the Choir. In sum, four of the six instances of inappropriate sexual contact between Brown and the victims occurred on school property. The evidence firmly establishes Brown's relationships with M.H. and R.C. were based on his employment. We conclude the State presented sufficient evidence to establish Brown had a professional relationship with M.H. and R.C.

## B. Knowledge Requirement

[11] As noted above, the State was required to prove Brown knew M.H. and R.C. were at least sixteen years of age but less than eighteen years of age. Ind. Code § 35-42-4-7(n)(1). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). A trier of fact may infer the requisite intent for a crime exists based solely on circumstantial evidence. *See Stokes v. State*, 922 N.E.2d 758, 764 (Ind. Ct. App. 2010) ("Knowledge and intent are both mental states and, absent an admission by the defendant, the trier of fact must resort to the reasonable inferences from both the direct and circumstantial evidence to determine whether the defendant has the requisite knowledge or intent to commit the offense in question."), *trans. denied*.

[12] At the outset, we note Brown did not testify at trial and there is no direct evidence indicating Brown knew M.H. and R.C. were under the age of

eighteen. However, the evidence and reasonable inferences arising therefrom indicates Brown has worked off-and-on with students participating in band for several years at "many other schools," tr. at 79, and common sense dictates the vast majority of high school students are under the age of eighteen, *see Staton v. State*, 853 N.E.2d 470, 475-76 (Ind. 2006) (noting a trier of fact can, and is expected to, apply common sense in weighing evidence). After meeting M.H. and R.C. at school, Brown continued to communicate with each outside of school. M.H. testified she and Brown expressed their love for one another. R.C. testified Brown explained his intent to divorce his wife, and marry and have children with her. R.C. also considered Brown her boyfriend. It is clear Brown had close relationships with each student and a reasonable trier of fact could infer Brown had knowledge of their ages.

[13] Given Brown's experience directing high school students and Brown's close and lengthy relationships with the victims, coupled with the common sense notion the majority of high school students are under the age of eighteen, a reasonable trier of fact could conclude Brown was aware of the high probability that M.H. and R.C. were under the age of eighteen. We conclude the State presented sufficient evidence to establish Brown knew M.H. and R.C. were under the age of eighteen.

# Conclusion

[14] The State presented sufficient evidence to support Brown's convictions for child seduction. Accordingly, we affirm.

[15]    Affirmed.

Kirsch, J., and Barnes, J., concur.