## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 25 2019, 9:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Terry L. Lynem
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Terry L. Lynem,

*Appellant-Petitioner*,

v.

State of Indiana,

*Appellee-Respondent*.

June 25, 2019

Court of Appeals Case No.
18A-PC-1028

Appeal from the Marion Superior Court

The Honorable Marc Rothenberg, Judge

The Honorable Amy J. Barbar, Magistrate

Trial Court Cause No.
49G02-0812-PC-288157

**Brown, Judge.**

[1]     Terry L. Lynem appeals the denial of his petition for post-conviction relief. We affirm.

*Facts and Procedural History*

[2]     The relevant facts and procedural history as discussed in Lynem's direct appeal follow:

> The evidence most favorable to the convictions reveals that Gregory Arnold, Jr., owns Big Engine Entertainment, a recording studio in Indianapolis. On December 18, 2008, a number of people were at the studio, including some of Arnold's relatives, friends, employees, and children. Arnold had known Lynem for about ten years.
>
> During the evening, Arnold's sister Shontez Simmons was outside smoking a cigarette when she was approached and greeted by her cousins Antwane Walker and Antonio Walker. Antwane and Antonio went into the studio but came right back out. Soon thereafter, Antwane and Antonio returned, accompanied by Lynem, Curtis Stokes, Johnnie Stokes, and a man named Marcus whose last name is unknown. Johnnie was carrying a black trash bag.
>
> Once inside the studio, Antwane and Antonio went into Arnold's office, where he was with Andrew Steele. Antwane and Antonio greeted Arnold, then asked to speak to Steele in the hallway. Once all three were in the hallway, Antonio pulled out a handgun, put it in Steele's face, and said "Get down, you know what this is." Tr. p. 479. Meanwhile, at the same time Johnnie, who was also in the hallway, pulled an assault rifle out of the trash bag he was carrying and began firing it, also saying "Get down, you know what this is." *Id.* at 480. Arnold managed to close the door to his office, after Antwane initially had prevented him from doing so. He then retrieved a handgun, opened his office door, and fired at Antonio.
>
> While this was occurring, Lynem and Marcus approached Big Engine employee Edriese Phillips. Lynem had been friends with

Phillips for several years. Lynem pointed a revolver at Phillips's stomach, and he and Marcus demanded that Phillips "[c]ome on with that s--- out of your pockets." Tr. p. 402. When Phillips said he had nothing in his pockets, Lynem struck him in the face with the revolver, breaking Phillips's glasses. Lynem or Marcus then reached into Phillips's pockets and removed $200.[1]

Lynem, Antwane, Antonio, Curtis, Johnnie, and Marcus left the building, with Antwane firing towards it as he left. After the shooting stopped and people began calling 911, it was discovered that Big Engine employee Collin Moore had been shot, leaving him paralyzed. Police officers dispatched after the incident soon located Lynem, Antwane, and Curtis walking together down a street near the studio. Eight days after the incident, Johnnie called Arnold and offered him $5000 in exchange for Arnold agreeing not to "press charges." *Id*. at 524.

On December 22, 2008, the State charged Lynem with one count of Class A felony attempted robbery, one count of Class B felony robbery, eight counts of Class B felony attempted robbery, one count of Class C felony battery, one count of Class C felony criminal recklessness, and one count of Class A misdemeanor carrying a handgun without a license. The State later filed an allegation that Lynem is an habitual offender.

A jury trial was held on March 9 through 13, 2009, for Lynem and four co-defendants. The trial court granted Lynem's motion for a directed verdict on three of the Class B felony attempted robbery counts, and the jury found him guilty of the remaining counts. Lynem waived a jury trial on the habitual offender allegation, and the trial court found that he is an habitual offender. The trial court sentenced Lynem as follows: thirty years for Count I, the Class A felony attempted robbery conviction, enhanced by thirty years for the habitual offender finding; twenty years for Count II, the Class B felony robbery conviction, consecutive to Count I; ten years for

---

[1] It is unclear from Phillips's testimony whether Lynem or Marcus reached into his pockets and removed the money.

each of the five Class B felony attempted robbery convictions, concurrent with Count I; eight years for the Class C felony battery and criminal recklessness convictions, concurrent with each other but consecutive to Count II; and one year for the Class A misdemeanor carrying a handgun conviction, to be served consecutively. Thus, the aggregate sentence was eighty-nine years.

*Lynem v. State*, No. 49A04-0905-CR-274, slip op. at 1-2 (Ind. Ct. App. December 17, 2009).

[3] On direct appeal, Lynem raised several arguments including that the trial court acted improperly after being advised the jury had been exposed to potentially prejudicial extraneous information during trial, the court erred in denying his motion for mistrial on the basis it failed to admonish the jurors after questioning them, the evidence was insufficient to support his convictions, the court abused its discretion in failing to find a mitigating circumstance, and his aggregate sentence is inappropriate. *See id*. at 2-7. With respect to his sufficiency of the evidence claim, Lynem argued that Edriese Phillips's testimony was incredibly dubious, inconsistent in some respects with statements he made to police, and varied from the testimony of some of the other witnesses in various particulars of precisely what occurred on the night of the incident. *Id*. at 5. We observed "it was not necessary for all of the State's witnesses to agree on every detail of what occurred during what was unquestionably a chaotic incident involving many people" and "[w]hat is important is that Phillips's trial testimony was internally consistent, and he adhered to his testimony directly implicating Lynem in the mass robbery, despite vigorous cross-examination." *Id*. We also observed that Phillips's testimony was not entirely uncorroborated; that

Shontez Simmons testified "that she saw Lynem walk into the building with Antonio, Antwane, Curtis, Johnnie, and Marcus"; that, shortly thereafter, Simmons heard gunfire erupting and ran away from the studio; and, soon after the incident, police apprehended Lynem as he was walking in a group with Antwane and Curtis near the studio. *Id.* at 6. We noted that any inconsistencies in the evidence, or the weight to be given Phillips's testimony, were for the jury to consider, held that there was sufficient evidence to support Lynem's convictions, and affirmed. *Id.* at 6, 8.

[4] Lynem filed a petition for post-conviction relief as amended in October 2015 alleging that his trial counsel allowed the State to admit part of a key witness's affidavit by stipulation of the parties; that the witness's statement to police, however, provided additional exculpatory evidence for him; that his counsel was deficient in failing to introduce this additional evidence; and that his counsel entering into the stipulation without his consent amounts to her failure to call an important witness which may constitute deficiency. Lynem also argued that he received ineffective assistance of appellate counsel and that his counsel "should have made a wider sufficiency argument like those raised" by his co-defendants which resulted in the reversal of certain attempted robbery convictions.[2] Appellant's Appendix Volume 2 at 51.

---

[2] Curtis Stokes, Antonio Walker, and Johnnie Stokes, on direct appeal, challenged the sufficiency of the evidence as to their intent to rob certain victims. With respect to Curtis Stokes and Antonio Walker, on direct appeal different panels of this Court affirmed the attempted robbery conviction related to victim Collin Moore and reversed the attempted robbery convictions related to victims Gregory Arnold Jr. ("Arnold Jr."), Fred Winfield, Shantell Williams, and Earnest Phillips. *See Antonio Walker v. State*, 49A02-0905-CR-432, slip

The post-conviction court, at a hearing, mentioned that Lynem's trial counsel had been ill and was not present. Lynem presented Collin Moore's statement to police.[3] Lynem also presented the testimony of his appellate counsel on direct appeal, Attorney Matthew Anglemeyer. When asked why he limited his sufficiency of the evidence argument "to only one witness, Edriese Phillips," Attorney Anglemeyer testified "that, at that time, was what I perceived to be your best chance of success." Supplemental Transcript Volume II at 23-24. He

op. at 7-10 (Ind. Ct. App. April 13, 2010) (holding "[t]he commands by Walker and Johnnie Stokes to 'Get down. You know what this is,' are without more too ambiguous to support a reasonable inference that Walker and his co-defendants intended to rob each of the alleged victims" but finding the fact that Moore "was directly ordered to 'get down' supports a reasonable inference that Walker and his co-defendants intended to rob him"), *trans. denied*; *Curtis Stokes v. State*, 919 N.E.2d 1240, 1246-1248 (Ind. Ct. App. 2010) (holding Antonio Walker's and Johnnie Stokes's "commands, 'Get down. You know what this is,' are, without more, too ambiguous to support a reasonable inference that Stokes and his codefendants intended to rob each of the alleged attempted robbery victims" but holding the fact that Moore "was singled out and directly ordered to 'get down' supports a reasonable inference that the perpetrators intended to rob him, but were interrupted when gunfire erupted" and affirming the conviction for the attempted robbery of Moore), *trans. denied*. With respect to Johnnie Stokes, another panel of this Court reversed the attempted robbery convictions related to Arnold Jr., Winfield, Shantell Williams, and Earnest Phillips and, in a split decision, also reversed the conviction related to victim Moore. *See Johnnie Stokes v. State*, 922 N.E.2d 758, 764-766 (Ind. Ct. App. 2010) (agreeing with *Curtis Stokes* that the evidence was insufficient to support four of the five class B felony attempted robbery convictions, concluding that the perpetrators lacked the requisite intent to rob those four alleged victims, and also vacating Johnnie's conviction for the attempted robbery of Moore, finding the evidence did not support a reasonable inference that the perpetrators intended to specifically rob him), *trans. denied*; *see also Johnnie Stokes*, 922 N.E.2d at 766-767 (Vaidik, J., dissenting in part and writing that she believed the evidence was sufficient to affirm the conviction for the attempted robbery of Moore). We note that Antwane Walker did not challenge the sufficiency of the evidence on direct appeal, and this Court affirmed all of his attempted robbery convictions. *Antwane Walker v. State*, No. 49A02-0904-CR-344 (Ind. Ct. App. December 8, 2009). As we discuss later in this decision, we subsequently affirmed the denial of Antwane Walker's petition for post-conviction relief. *Antwane Walker v. State*, No. 49A02-1112-PC-1173 (Ind. Ct. App. July 19, 2012), *trans. denied*.

[3] Petitioner's Exhibit 2 contains the transcript of an interview of Moore by a detective. Moore indicated that he did not know how many men in total were involved, he did not recognize any of them, and they had guns and he was trying not to look at them. The interview transcript also reveals that Moore was shown a photo array and asked if he recognized anyone, stated "I recognize a lot of people . . . but I'm saying I don't . . . remember seeing them there," stated that he knew "number six" and "[w]e pretty good friends," and when asked "[b]ut you don't recall if he was there or not," answered "[n]o I don't remember seeing him at all." Petitioner's Exhibit 2 at 6-7. The name "Terry" is written on the interview transcript and appears to indicate that Moore was referencing Lynem. *Id.* at 6.

testified: "I spoke with your trial counsel, . . . and in that conversation she and I agreed that Mr. Phillips' testimony, since it vacillated quite a bit and had some internal inconsistencies, that Incredible Dubiosity would be appropriate and proper for him. As to any other insufficient claims, I didn't believe that those would have been as meritorious nor did they have the chance for success on appeal as did . . . attacking Mr. Phillips' testimony." *Id*. at 24-25. When asked "[s]o you're saying his was more stronger than . . . the other . . . arguments on anything," he replied "[c]orrect." *Id*. at 24. Attorney Anglemeyer further testified that "the testimony of one witness . . . is sufficient to convict you," "that person was Edriese Phillips and that's why I chose to attack that person's testimony," "[s]imply because other witnesses did not testify that you were there doesn't mean that you were not there," "[o]ne witness placed you there," "[t]hat witness was Edriese Phillips," "[t]hat's why I chose to attack his testimony as incredibly dubious because if his testimony was incredibly dubious, then the only witness who placed you at that scene was incorrect and your convictions would be overturned," and "[t]hat's why I chose that specific issue." *Id*. at 26. Lynem asked Attorney Anglemeyer if he was familiar with the direct appeal opinions of his co-defendants, and Attorney Anglemeyer replied affirmatively. Lynem then asked why he did not raise the issues that were successful for his co-defendants in their appeals, and Attorney Anglemeyer answered "I don't recall that. I'm sorry." *Id*. at 29.

[6] The post-conviction court denied Lynem's petition. It noted that Lynem was unable to procure the testimony of trial counsel because of her ongoing health

issues. **(70)** It found that Moore was unable to testify at trial; "[i]n lieu of his live testimony, the trial counsels and the State entered into a joint stipulation regarding his testimony" admitted at trial as State's Exhibit 75; the stipulation indicated Moore would have testified that he was present at the incident at the studio, during which he was ordered to the ground, heard multiple gunshots, and suffered a gunshot wound; and the stipulation also provided that no property was taken from Moore and he was unable to identify any of the people who perpetrated the crime. Appellant's Appendix Volume 2 at 71. The court found "it is apparent that entering into this stipulation was trial strategy that was pursued by all five attorneys who represented the defendants in the case." *Id*. It found the stipulation was "a reasonable trial strategy which mitigated as much risk as was possible in the circumstances," the record indicates Moore was unavailable "primarily due to health issues directly stemming from the crimes," and "[f]rom a defense standpoint, . . . the stipulation as entered, presented his probable testimony by which he averred to the obvious fact that he was injured in the incident, but while also acknowledging that he was unable to identify any of the [sic] also while removing the specter of possibly emotional impact of video testimony from a paralyzed crime victim." *Id*. at 72. It also found the only direct evidence the stipulation provided could likely have been obtained through other witnesses such as medical service providers.

[7] With respect to Lynem's claim of ineffective assistance of appellate counsel, the post-conviction court noted that the background involves appellate decisions in the cases of four of Lynem's co-defendants, that this Court had found

insufficient evidence on four counts in two of his co-defendants' cases,[4] that this Court had found there was insufficient evidence on five counts in one of the co-defendant's cases,[5] and that, in one of the co-defendant's cases, this Court, on appeal from the denial of a petition for post-conviction relief, found no ineffective assistance of appellate counsel for failure to raise an insufficiency of the evidence claim.[6] The court found that Lynem's appellate counsel testified "that his decision on the issue he raised was a considered, strategic decision made after reviewing the record, consulting with trial counsel, and reviewing the applicable law" and he "considered the argument regarding all of the robbery victims . . . to be not as meritorious." *Id*. at 74-75. It found: "Given that 3 of 4 panels of the Court of Appeals have differed in their analyses of the ineffective issue,[7] it is a strong indicator that the unraised issue is not so strong or obvious as to require a reversal or new trial. And of those panels, only one found insufficiency on the count that would make any difference in [Lynem's] sentence." *Id*. at 75. The court concluded, "[b]ased on the record available at the time of the appeal, appellate counsel's choice of issues to present on appeal

---

[4] *See Antonio Walker*, 49A02-0905-CR-432; *Curtis Stokes*, 919 N.E.2d 1240. The post-conviction court found that, because the sentences for the vacated counts had been ordered to be served concurrent with other counts, there was no impact on the sentences in these cases.

[5] *See Johnnie Stokes*, 922 N.E.2d 758. The post-conviction court noted that Johnnie Stokes's sentence was reduced from seventy-four years to forty-four years.

[6] *See Antwane Walker*, No. 49A02-1112-PC-1173.

[7] It appears the post-conviction court intended to reference the sufficiency of the evidence issue.

was a reasonable exercise of judgment which did not fall below the professional norm." *Id*.

### *Discussion*

[8] Before addressing Lynem's allegations of error, we observe that Lynem is proceeding *pro se*. Such litigants are held to the same standard as trained counsel. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id*. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id*.

[9] Lynem claims his trial counsel and appellate counsel rendered ineffective assistance. Generally, to prevail on a claim of ineffective assistance of counsel

a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[10] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*,

492 N.E.2d 306, 309 (Ind. 1986).  We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).  In order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection would have been sustained if made.  *Passwater v. State*, 989 N.E.2d 766, 772 (Ind. 2013).

[11]   We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000), *reh'g denied*, *cert. denied*, 531 U.S. 1128, 121 S. Ct. 886 (2001).  Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well.  *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013).  To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential.  *Id.*  To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are clearly stronger than the raised issues.  *Id*.  If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether the issues which

appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial. *Id.*

A. *Trial Counsel*

[12] Lynem asserts that his trial counsel was ineffective for entering into the stipulation admitted as State's Exhibit 75 and that the stipulation withheld additional exculpatory evidence, including the fact that Moore picked Lynem out of a photo array as not being present at the studio. The State maintains that Moore's live testimony would have exposed the jury to the harsh reality of his paralysis and that, under these circumstances, stipulating to his testimony was a reasonable trial strategy. It also maintains Lynem did not show that he disapproved of or was prejudiced by the stipulation and that, as Moore did not identify him as a perpetrator, the only incriminatory evidence was that Moore suffered very serious injuries, which could have been presented without the stipulation through other witnesses. The State further argues there is no indication that it would have agreed to include any additional statements from Moore's police statement in the stipulation and that, even if admitted, the additional statements would have carried little exculpatory value in part because Moore did not know how many people were involved and had minimal opportunity to view the perpetrators.

[13] State's Exhibit 75 consists of an Agreed Stipulation as to Fact and Admissibility and provides that the State's witness Collin Moore was unavailable to testify but that his testimony would have been as follows: he was present "during an

incident where individuals he was unable to identify entered the building and engaged in gunfire"; during the incident "he was ordered to get on the ground by individuals whom he was unable to identify"; he heard multiple gunshots; he suffered a gunshot wound to his lower left abdomen, resulting in paralysis of both of his legs; and no property was taken from his person. State's Trial Exhibit 75. To the extent Lynem points to statements Moore made during an interview with a detective, he does not establish that the State would have agreed to include any particular statements from the interview in the stipulation or assert another basis for the admission of the statements into evidence. To the extent he asserts his counsel should not have agreed to the stipulation, he does not argue that Moore's statement in the stipulation that he was unable to identify the perpetrators was incorrect, and he does not show how he was prejudiced by the admission of the stipulation. He has not established that he received ineffective assistance of trial counsel.

B. *Appellate Counsel*

[14]    Lynem contends his appellate counsel was ineffective in his decision not to broaden the insufficiency of the evidence argument as to all of his attempted robbery charges and that, as in his co-defendants' cases, the State failed to show he had intent to rob each individual present in the building. The State maintains he is not entitled to relief and that Attorney Anglemeyer presented a plausible argument in support of the claim that Edriese Phillips provided inconsistent and uncorroborated testimony. It states that three of his co-defendants successfully challenged the sufficiency of the evidence for the

attempted robbery convictions involving victims who were not directly threatened but that "none of the co-defendants received a sentencing reduction with regard to those counts because all defendants received sentences ordered concurrent with the convictions related to Moore" and that "[o]nly co-defendant Johnnie Stokes received a sentence reduction because one panel also found insufficient evidence of intent to rob Moore even though Moore was ordered to the ground and shot during the attempted robbery." Appellee's Brief at 19. The State maintains that "the only other panel which considered whether competent representation required raising these issues" found that Lynem's co-defendant Antwane Walker was not entitled to relief. *Id*. (citing *Antwane Walker*, No. 49A02-1112-PC-1173). It argues "[t]he same result should be reached here as Attorney Anglemeyer also reasonably believed such a claim would have failed." *Id*. at 20. It also argues, "[m]oreover, a review of the trial transcript does support an argument that the co-defendants intended to rob everyone at the recording studio, but abandoned that plan when one of the victims produced a gun and started shooting," "[s]uch an inference is supported by the evidence that the co-defendant[s] were working together and were robbing different people in the building," and "[t]he jury could reasonably find that [Lynem] and his co-defendants would have robbed the other persons as well, had they not been thwarted." *Id*. at 20-21.

[15]     Antwane Walker was one of Lynem's co-defendants and was convicted, like Lynem, of multiple counts of attempted robbery. In *Antwane Walker*, No. 49A02-1112-PC-1173, Antwane appealed from the denial of his petition for

post-conviction relief and argued that, since this Court found insufficient evidence for three of his co-defendants, his counsel was necessarily ineffective because she did not raise the issue on direct appeal. We observed that only one of the co-defendants, Johnnie Stokes, had a positive outcome on appeal in terms of obtaining reversal of a count which resulted in a reduction of his sentence. We found that the negative outcomes of the other co-defendants as to that count are an indication that a sufficiency of evidence claim was not a strong or obvious claim to present on direct appeal. Further, we observed that Antwane's appellate counsel testified that she did not raise the sufficiency claim because she believed Antwane and his co-defendants were working as two groups operating together and believed the perpetrators were accomplices and thus were jointly and severally liable. His appellate counsel testified that she was under the impression that all of the alleged victims were being robbed during the incident as opposed to just one victim being robbed and the other victims just being present.

[16] We held that, based on the record available at the time of appeal, appellate counsel's choice of issues to present on direct appeal was a reasonable exercise of judgment which did not fall below the professional norm, and we noted that this Court may not look back in hindsight and speculate as to whether raising the sufficiency of evidence claim would have presented a more favorable outcome. We concluded that Antwane's appellate counsel's decisions did not fall below any objective standard of reasonableness and that he was not denied effective assistance of counsel.

[17] Like in *Antwane Walker*, No. 49A02-1112-PC-1173, we do not find Lynem's argument that he received ineffective assistance from his appellate counsel to be persuasive. Attorney Anglemeyer testified that he believed that focusing the sufficiency argument on Edriese Phillips's testimony was Lynem's best chance of success because he was the witness who identified him as one of the perpetrators. Attorney Anglemeyer also testified: "As to any other insufficient claims, I didn't believe that those would have been as meritorious nor did they have the chance for success on appeal as did . . . attacking Mr. Phillips' testimony." Supplemental Transcript Volume II at 24-25. Further, we note that, at the time Attorney Anglemeyer filed an appellant's brief, this Court had not yet issued its decisions in the direct appeals of Lynem's co-defendants.

[18] In addition, we observe that, even if Lynem's convictions for the attempted robbery of Arnold Jr., Winfield, Williams, and Earnest Phillips had been vacated, his aggregate sentence would not have been impacted. As mentioned above, *see supra* at 5 n.2, while a reversal of his conviction for the attempted robbery of victim Collin Moore would impact his aggregate sentence, we observe that two panels of this Court on direct appeal, in *Curtis Stokes* and *Antonio Walker*, affirmed the attempted robbery convictions related to Moore, *see Antonio Walker*, 49A02-0905-CR-432, slip op. at 7-10; *Curtis Stokes*, 919 N.E.2d at 1246-1248, that only one panel of this Court, in *Johnnie Stokes*, reversed the conviction related to Moore, *see Johnnie Stokes*, 922 N.E.2d at 764-766, and that Chief Judge Vaidik dissented in *Johnnie Stokes*, believing the evidence was sufficient to affirm the conviction related to Moore. *See Johnnie*

*Stokes*, 922 N.E.2d at 766-767 (Vaidik, C.J., dissenting). Thus, only two of the nine judges on the three panels of this Court which addressed the issue voted to reverse the attempted robbery conviction related to victim Moore.

[19] There is no distinction between the responsibility of a principal and an accomplice. *Wise v. State*, 719 N.E.2d 1192, 1198 (Ind. 1999). A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. Ind. Code § 35-41-2-4. The factors generally considered to determine whether a person has aided another in the commission of a crime include: presence at the scene of the crime, companionship with another engaged in a crime, failure to oppose the commission of the crime, and the course of conduct before, during, and after the occurrence of the crime. *Wieland v. State*, 736 N.E.2d 1198, 1202 (Ind. 2000). When evidence is challenged as insufficient, we look to the evidence and the reasonable inferences therefrom that support the verdict and do not reweigh the evidence. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Because intent is a mental function and usually must be determined from a person's conduct and resulting reasonable inferences, the element of intent may properly be inferred from circumstantial evidence. *Beatty v. State*, 567 N.E.2d 1134, 1139 (Ind. 1991).

[20] The evidence at trial established that Lynem and his co-defendants entered the studio building. Arnold Jr., Fred Winfield, Shantell Williams, and Andrew Steele were located in an office in the studio building when Antonio and Antwane Walker entered the office, and Earnest Phillips was located in a recording booth connected to the office. Antonio asked to talk to Steele in the

hallway. Once Steele was in the hallway, Antonio pulled out a semi-automatic handgun, placed it forcefully in Steele's face and said: "Get down, you know what this is." Trial Transcript at 479. Johnnie Stokes, located in the hallway or main office area outside the office, repeated Antonio's command by saying "Get down, you know what this is," and pulled an assault rifle out of the black trash bag he was carrying. *Id.* at 480. Arnold Jr. interpreted Johnnie Stokes's command to be directed toward him. When asked if the threat was made to him, Arnold Jr. answered "[i]t had to be," and when asked if he knew that for sure, he replied "yes, it was." *Id.* at 510. When asked if the commands "could have been directed to anybody" in his office, Arnold Jr. replied "I'm accountable for them," and when asked if he knew for sure if Johnnie Stokes made the statement to him, he replied "I took it towards me, yes." *Id.* at 511.

[21] Once he heard the commands, Arnold Jr. "jumped out of the chair trying to slam . . . close the door," "Antwane Walker was wedged into between the door, from this side to that side," and Arnold Jr. heard a gunshot coming from the main office area, "forcefully closed the door," and "wedged [him]self on the door." *Id.* at 481-482. Arnold Jr. then heard additional gunshots. Meanwhile, Edriese Phillips saw Johnnie Stokes with a "long rifle with a banana clip" and testified that, "by the time I saw that, Terry and Marcus had snatched me to the side against this wall," Lynem pointed a revolver at his stomach, the men demanded his money, and Lynem struck him with the gun. *Id.* at 401. As the men were taking money from him, Edriese heard gunfire which "was in the

hallway" and "was real close, like . . . it was fired on the side of [his] head." *Id.* at 432.

[22] In addition, one of Arnold Jr.'s children testified "they said '*Everybody* get down, I ain't playing.'" *Id.* at 327 (emphasis added). Further, Shantell Williams testified that she heard the command: "*Ya'll* know what this is. *Everybody* get down." *Id.* at 372 (emphases added). The evidence also shows that Moore was directly ordered to the ground and suffered a gunshot wound to his lower left leg. At some point, Arnold Jr. opened the office door and, using his own handgun, shot at Antonio, and the perpetrators left the building. Edriese testified that he heard more than five gunshots, that he saw Antwane running backwards out of the building and firing as he was running, and that the hallway after the gunfire stopped was "real smoky, real cloudy." *Id.* at 406.

[23] Based upon the record, we cannot find that Lynem has offered convincing evidence to overcome the strongest presumption of adequate assistance or has shown that it was unreasonable for his appellate counsel to conclude that the evidence supports at least a reasonable inference that the co-defendants had intent to rob Arnold Jr., Winfield, Williams, Earnest Phillips, and Moore, and accordingly we conclude that Lynem's appellate counsel's decisions did not fall below an objective standard of reasonableness.[8] *See Washington v. State*, 517

---

[8] We acknowledge as discussed above that different panels of this Court reversed certain attempted robbery convictions of Curtis Stokes, Antonio Walker, and Johnnie Stokes. However, we note that each of those decisions focused primarily on the command "Get down, you know what this is" and the fact that that command was, without more, too ambiguous to support the inference that the co-defendants intended to rob

N.E.2d 77, 79 (Ind. 1987) (holding the evidence was sufficient to show the defendant performed a substantial step toward commission of a robbery where the defendant reached for a gun hidden in his jacket and it could be inferred the defendant would have robbed the victims had he not been unexpectedly stopped when the victims fought back by grabbing him and striking him on the head with a cane). Lynem has not established that his appellate counsel rendered ineffective assistance.

## Conclusion

[24] For the foregoing reasons, we affirm the denial of Lynem's petition for post-conviction relief.

[25] Affirmed.

May, J., and Mathias, J., concur.

---

certain victims. *See Antonio Walker*, 49A02-0905-CR-432, slip op. at 7-10; *Curtis Stokes*, 919 N.E.2d at 1246-1248; *Johnnie Stokes*, 922 N.E.2d at 764-766. Moreover, as discussed above, our review of the trial testimony supporting the verdicts reveals evidence in addition to the arguably ambiguous command. In particular, testimony was before the jury that the co-defendants commanded "*Everybody* get down" and "*Ya'll* know what this is. *Everybody* get down." Trial Transcript at 327, 372 (emphases added). Further, there was evidence that Arnold Jr. interpreted Johnnie Stokes's command to be directed toward him and that Moore was commanded to get down as noted in *Curtis Stokes* and *Antonio Walker*. Lynem's appellate counsel on direct appeal, in reviewing this evidence in light of the record as a whole, could have reasonably concluded that this Court would find that the jury could reasonably infer that the co-defendants, and Lynem as a principal or accomplice, had the intent to work together to commit the various attempted robberies as alleged and that the evidence supported the challenged convictions.